UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR WEEKS,<br><br>        Plaintiff,<br><br>    v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>        Defendants. | Case No.: 1:13-cv-01641 - AWI-JLT<br><br>ORDER DENYING PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT<br><br>(Doc. 83) |

      Trevor Weeks asserts his employer, Union Pacific Railroad Company, has discriminated against him. Plaintiff seeks leave to file a First Amended Complaint, asserting "[n]ew facts and evidence have developed and have come to Plaintiff's attention…related to the allegations in this case of disability discrimination, failure to accommodate, and unfair business practices by the Defendant." (Doc. 56) Because the Court finds Plaintiff fails to demonstrate leave to amend is appropriate, the motion is **DENIED**.

**I.     Background**

      Plaintiff is currently employed by Defendant Union Pacific, which operates railroad tracks in 23 states and ships goods throughout the country. He reported he "accidentally inhaled chlorine fumes from a locomotive toilet" in October 2001, and "suffers from chronic obstructive pulmonary disease and reactive airway disease with asthma." (Doc. 1 at 3, ¶ 8; Doc. 43 at 6) Plaintiff contends that "fumes, dust, and sand that come into the engine cab can aggravate [his] lung condition (especially

when the train is travelling through tunnels) and cause [him] to take two to three days off to recover." (Doc. 43 at 6)

In June 2004, Plaintiff filed a lawsuit related to the accident against Union Pacific in the state court. (Doc. 1 at 3, ¶ 11; Doc. 43 at 6) Plaintiff alleges that since he returned to work, Union Pacific "has refused to accommodate his physical disability or engage in an interactive process to determine reasonable accommodation." (Doc. 1 at 3, ¶ 11) He reports he has "requested accommodation of his physical disability on numerous occasions," by requesting "to transfer to a position in which he would not be routinely exposed to harmful chemicals which exacerbate his medical condition." (*Id.*, ¶ 8) Specifically, between December 2005 and October 2008, Plaintiff applied for thirty different positions with Union Pacific. (Doc. 43 at 6) Plaintiff asserts he "was not offered any of these jobs, despite being the 'number one contender' on occasion." (*Id.*) In July 2012, Plaintiff requested a "hardship transfer" "by sending a letter to his union chairman, who then wrote a letter to Union Pacific." (*Id.* at 7) However, Plaintiff alleges Union Pacific "has ignored or denied all of Plaintiff's requests for accommodation." (Doc. 1 at 3, ¶ 10)

In 2013, Plaintiff's "doctor certified that Weeks needed intermittent leave four times per year." (Doc. 43 at 8) Plaintiff requested intermittent leave, which was granted by Union Pacific in on July 16, 2013. (*Id.*) That same month, Plaintiff filed a discrimination charge with the EEOC, in which he "complained about not being transferred or hired for a new position despite applications and requests for a transfer, which would have accommodated Weeks's disability." (*Id.*) "[T]he EEOC was unable to conclude that a violation of federal law had occurred and issued Weeks a "Dismissal and Notice of Rights." (*Id.*) Accordingly, Plaintiff initiated this lawsuit by filing a complaint on October 10, 2013. (Doc. 1)

Based upon the foregoing facts, Plaintiff raised the following causes of action in his complaint: (1) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; (2) disability discrimination in violation of California's Fair Employment and Housing Act, Cal. Gov't Code § 12920 *et seq.*; (3) retaliation in violation of California's Family Rights Act, Cal. Gov't Code § 12945.2 and 2 C.C.R. § 7297.7; and (4) retaliation for concerted activity in violation of Cal. Labor Code § 923. (Doc. 1 at 4-7)

Defendant filed a motion for summary judgment on March 2, 2015.  (Doc. 25)  The Court issued a memorandum decision on the motion on October 7, 2015.  (Doc. 43)  Noting that Plaintiff submitted evidence related to a Notice of Discipline issued in March 2015, the Court observed it post-dated "both the summary judgment and the operative complaint." (*Id.* at 17)  However, the Court retained "discretion to consider a new theory raised in an opposition to be a request to amend." (*Id.*, citing *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *cf. Fossen v. Blue Cross & Blue Shield of Mont.*, 660 F.3d 1102, 1115 (9th Cir. 2011) (holding that district court was within its discretion in denying leave to amend where theory was raised first in opposition to summary judgment)).  The Court found the evidence submitted by Plaintiff to be insufficient—at that time—to determine whether the Notice was an adverse action, which would support Plaintiff's claims of discrimination and retaliation.  (*Id.*)  The Court explained the Notice "reads more as a type of warning than as actual discipline." (*Id.*)  Because there was no evidence to support a conclusion that it was an adverse employment action, the Court concluded leave to amend was "futile at this time." (*Id.*)

Granting Defendant's motion for summary judgment in part, Court noted it would "permit Weeks to pursue a motion to amend his complaint to include claims regarding the March NOD." (Doc. 43 at 33)  The Court cautioned Plaintiff to "only file such a motion…if, consistent with Rule 11, he has a good faith belief that he has viable claims and that amendment is proper under the circumstances." (*Id.* at 33-34)  Accordingly, the Court informed the parties that Plaintiff "may request a briefing schedule with the Magistrate Judge for filing a motion to amend." (*Id.* at 34)  Similarly, the Court authorized Defendant to file a second motion for summary judgment, after notifying the Court of its intent to do so, if Defendant had "a good faith belief that it can meet its burden and that there are no genuinely disputed issues of material fact." (*Id.* at 33)

Rather than seeking the briefing schedule as required by the Court, soon after Defendants filed a second motion for summary judgment, Plaintiff filed a First Amended Complaint without permission of Defendant or leave of Court.  (Doc. 55)  Plaintiff later filed a motion to amend the complaint, seeking to add facts related to the Notice of Discipline issued in March 2015.  (Doc. 56)  The Court found Plaintiff failed to demonstrate good cause under Rule 16 for filing an amended complaint after the pleading amendment deadline of April 21, 2014.  (Doc. 68 at 5-7)  In addition, the Court determined

Plaintiff failed to demonstrate leave to amend was appropriate under Rule 15, because Plaintiff delayed in seeking leave to amend for facts he was "aware of …for approximately eleven months." (*Id.* at 8) Further, Plaintiff sought only to add additional factual support, and Defendants would be prejudiced by further delays to the proceeding. (*Id.* at 9-10) Therefore, the Court denied Plaintiff's motion to amend on February 25, 2016.

On April 21, 2016, the Court issued its ruling on Defendants' second motion for summary judgment. (Doc. 71) The Court found it was "advisable to reopen discovery" because Plaintiff's counsel asserted "further discovery and depositions are needed to address summary judgment issues and to properly prosecute this case." (*Id.* at 18) Therefore, the matter was "referred back to the Magistrate Judge for the purpose of entering a new scheduling order," reopening discovery, and setting new discovery deadlines. (*Id.*)

On May 19, 2016, the Court issued its "Further Scheduling Order." (Doc. 76) The Court directed the parties to complete all non-expert discovery by October 3, 2016, and file "[a]ny non-dispositive pre-trial motions, including any discovery motions,… no later than December 30, 2016." (*Id.* at 2, emphasis omitted) The Court also set dispositive motion deadlines, as well as the pretrial conference and trial dates. (*Id.*) The parties were advised: "**No other amendments to the case schedule are authorized and the Court does not anticipate granting further requests to amend the case schedule.**" (*Id.*, emphasis in original)

Plaintiff filed a motion to amend the deadline for filing non-dispositive and dispositive motions on December 29, 2016. (Doc. 82) In addition, Plaintiff filed a motion to amend the complaint on December 30, 2016. (Doc. 83) The Court denied the motion to amend the deadline without prejudice on January 6, 2017. (Doc. 85) Plaintiff filed an additional memorandum of points and authorities in support of his request to amend the complaint on January 19, 2017, asserting that "within the past week, Union Pacific failed to renew Trevor Weeks' locomotive engineers license, thereby rendering him ineligible to drive the train, being unlicensed." (Doc. 87 at 3) Plaintiff asserted that he now "has no work to which he can return and he has been effectively terminated." (*Id.*) As a result, Plaintiff seeks to amend the complaint to add wrongful termination claims. (*Compare* Doc. 1 *with* Doc. 87-3)

Defendant filed its opposition to the motion on February 2, 2017 (Doc. 91), to which Plaintiff

filed a reply on February 13, 2017 (Doc. 92)

## II.     Legal Standards

### A.     Scheduling Orders

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." Id. Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### B.     Pleading Amendments

Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within 21 days of service, or if the pleading is one to which a response is required, 21 days after service of a motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Because Defendant does not consent to the filing an amended complaint, Plaintiff seeks the leave of the Court.

Granting or denying leave to amend a complaint is in the discretion of the Court, *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  Consequently, the policy to grant leave to amend is applied with extreme liberality. *Id.*

There is no abuse of discretion "in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).  After a defendant files an answer, leave to amend should not be granted where "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (citing *Yakama Indian Nation v. Washington Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)).

### III.     Discussion and Analysis

As an initial matter, Plaintiff brings his motion to amend "under Fed. R. Civ. P. 15 (a) (2) and (b) (1) (C)." (Doc. 87 at 3)  Plaintiff contends the motion is properly under Rule 15 because "[t]he new Scheduling Order does not list a date for amendment to pleadings but does specify a deadline for filing non-dispositive motions as December 30, 2016." (Doc. 92 at 2)  Significantly, however, the Further Scheduling Order issued by the Court was intended to *amend* the prior scheduling order, not replace the entire schedule and start the matter anew.  This is apparent as the Court explicitly informed the parties that the amended schedule was for the limited purpose of re-opening discovery. (Doc. 71 at 18). In re-

opening discovery and setting applicable motion deadlines, the Court also informed the parties: "**No other amendments to the case schedule are authorized and the Court does not anticipate granting further requests to amend the case schedule.**" (Doc. 76 at 2, emphasis in original)  Consequently, the Court did contemplate a new pleading amendment deadline and the deadline previously ordered remained in place.

Because all pleading amendments in the action were ordered to be completed by April 21, 2014 (Doc. 11 at 2), Plaintiff is required to demonstrate good cause under Rule 16 for filing an amended pleading out-of-time. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (explaining the question of whether the liberal amendment standard of Rule 15(a) or the good cause standard of Rule 16(b) apples to a motion for leave to amend a complaint depends on whether a deadline set in a Rule 16(b) scheduling order has expired).  Accordingly, the Court examines Plaintiff's diligence to determine whether amendment of the scheduling order is proper.

### A. Plaintiff's Diligence

In the memorandum of points and authorities dated December 30, 2016, Plaintiff again sought leave to amend the complaint to add facts related to the Notice of Discipline issued in March 2015. (Doc. 83-1 at 2)  As the Court previously noted, Plaintiff has been aware of these facts since the disciplinary action was issued, and he fails to demonstrate any diligence in seeking leave to amend the complaint.  Even to the extent Plaintiff relies upon the Court's order on the motion for summary judgment, which refers to the Notice of Discipline as a "significant event[]" related to Plaintiff's claims (*see* Doc. 71 at 19), Plaintiff fails to demonstrate diligence as the Court's order was issued in April 2016 and he waited more than eight months to seek leave to amend.  *See Schwerdt v. Int'l Fidelity Ins. Co.*, 28 F. App'x 715, 719 (9th Cir. 2002) (delay of one month after learning of facts from a witness' deposition did not constitute diligence under Rule 16 in seeking leave to amend); *Sako v. Wells Fargo Bank, Nat. Assoc.*, 2015 WL 5022326, at *2 (S.D. Cal. 2015) ("Courts have held that waiting two months after discovering new facts to bring a motion to amend does not constitute diligence under Rule 16"); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after discovering new facts, and after fully briefed summary judgment motion, did not meet the good cause standard under Rule 16).

On the other hand, in the amended points and authorities filed January 19, 2017, Plaintiff also seeks leave to amend based upon an action taken by Union Pacific on January 9, 2017. (Doc. 87 at 3; Doc. 87-2 at 5, Weeks Decl. ¶ 15) Plaintiff reports Union Pacific "did not send in the required documents to keep by locomotive engineers' license from expiring," and as a result, he is "no longer eligible to drive the train." (*Id.* at 5) Because the action was taken only a week before the amended points and authorities were filed, Plaintiff shows diligence in seeking leave to amend the scheduling order for purpose of filing an amended complaint on these grounds.

### B.  Leave to Amend under Rule 15

Evaluating a motion to amend, the Court may consider (1) whether the party has previously amended the pleading, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Loehr v. Ventura County Comm. College Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). These factors are not of equal weight, because prejudice to the opposing party has long been held to be the most critical factor to determine whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

#### 1.  Prior amendments

The Court's discretion to deny an amendment is "particularly broad" where a party has previously amended the pleading. *Allen*, 911 F.2d at 373. Here, the amendment sought is the first requested by Plaintiff. Therefore, this factor does not weigh against amendment.

#### 2.  Undue delay

By itself, undue delay is insufficient to prevent the Court from granting leave to amend pleadings. *Howey v. United States*, 481 F.2d 1187, 1191(9th Cir. 1973); *DCD Programs v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1986). However, in combination with other factors, delay may be sufficient to deny amendment. *See Hurn v. Ret. Fund Trust of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981). Evaluating undue delay, the Court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1387; *see also Eminence Capital*, 316 F.3d at 1052. Also, the Court should examine whether "permitting an amendment would . . . produce an undue delay in the litigation." *Id*. at 1387.

In this case, the facts Plaintiff seeks to add were not known at the time of the original complaint, because they arose after Plaintiff initiated this action. As discussed above, Plaintiff delayed in seeking leave to amend related to the Notice of Discipline. On the other hand, the renewal of Plaintiff's locomotive engineer license only recently arose in January 2017. Consequently, this factor favors amendment.

### 3. Bad faith

There is no evidence before the Court suggesting Plaintiff acted in bad faith in seeking amendment. Therefore, this factor does not weigh against amendment.

### 4. Futility of amendment

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin,* 59 F.3d at 845; *see also Miller v. Rykoff-Sexton,* 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient"). Futility may be found where the proposed claims are duplicative of existing claims or patently frivolous, or both. *See Bonin*, 59 F.3d at 846. Here, Plaintiff seeks leave to amend to add additional factual support for his prior claims as well as claims for wrongful termination based upon Union Pacific's failure to renew his locomotive engineer's license. (Doc. 87) Defendant argues that leave to amend these causes of action are not proper, because they lack the support of sufficient factual allegations, and are improper as a matter of law. (Doc. 91 at 8-9)

#### a. Sufficiency of factual allegations

As an initial matter, this factor does not require a determination of whether the pleadings are factually sufficient. *See Miller*, 845 F.2d at 214. Thus, though the Court agrees there are no facts alleged supporting a conclusion that Plaintiff was qualified for the license certification, the factual sufficiency of Plaintiff's proposed amended complaint does not weigh against leave to amend.

#### b. Exhaustion of administrative remedies

Defendant argues that "to the extent plaintiff's claim is that Union Pacific improperly deemed him unqualified for certification, plaintiff was required to first exhaust his administrative remedies by petitioning the Locomotive Engineer Review Board to determine whether the denial was improper." (Doc. 91 at 9)

As Defendant observe, the Federal Railroad Administration "has broad regulatory authority over the country's railroads." (*Id.* at 8, citing 49 C.F.R. Part 240)  The purpose of the Federal Railway Safety Act "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.  As such, the FRSA includes procedures governing the certification of locomotive engineers, and railroad may not "[c]ertify a person as a qualified engineer for an interval of more than 36 months."  49 CFR § 240.217

If a locomotive engineer "has been denied certification, denied recertification, or has had his or her certification revoked and believes that a railroad incorrectly determined that he or she failed to meet the qualification requirements of this regulation when making the decision to deny or revoke certification, may petition the Federal Railroad Administrator to review the railroad's decision."  49 C.F.R. § 240.401(a).  Despite the permissive language of § 240.401, the Eighth Circuit has determined that a locomotive engineer's state claim against his railroad employer due to its suspension of his license was completely preempted by the Federal Railroad Safety Act.  *See Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 261-62 (8th Cir. 1996).  The court determined that the FRSA established a scheme for resolving licensing disputes, and a claim based upon a licensing dispute could be supplanted by a claim to the Locomotive Engineer Review Board under the FRSA.  *Id.*  Thus, any challenge to the failure to certify the engineer *must* be raised, if at all, according to the requirements of § 240.401 and cannot be raised as a challenge under state law based upon wrongful termination or otherwise.

At the hearing, plaintiff's counsel asserted that the "wrongful termination" claim arises not only under state law but also under the ADA.  Toward this end, she pointed to "Count Four" of the "First Claim for Relief" as argument that such a claim is not preempted by the FRSA.  (Doc. 87-3 at 10-26)  However, the assertion that the plaintiff was discharged based upon his disability is merely evidence of his *damages* arising under the ADA and is not a separate claim.  Toward this end, the plaintiff has *always* claimed that UP has prohibited his return to work by failing to accommodate his medical condition.  The fact that he has now lost his license to drive a train adds nothing to this analysis because, of course, according to the plaintiff he could not return—even with a license—until UP gave him a route that addressed his condition and UP refused to do so.

Moreover, the plaintiff offers no legal analysis that somehow placing a "wrongful termination"

10

claim under the hearing "ADA" translates it into anything more than allegations related to damages or a claim arising under state law. Clearly the ADA does not allow for a "wrongful termination" claim except as it may relate to damages suffered as a result of a violation of the ADA[1] and the plaintiff offers no authority to the contrary.

In his proposed first amended complaint, Plaintiff fails to allege that he has exhausted his administrative remedies by petitioning the Locomotive Engineer Review Board for a determination regarding whether the denial of his recertification was improper. Rather, Plaintiff declined to address this issue at all in his reply. Indeed, at the hearing, his counsel made clear that the plaintiff has not challenged the failure to recertify him under the FRSA. Thus, the Court's review of the legal authority demonstrates that Plaintiff's claim for wrongful termination—based upon the denial of his recertification—is futile. Consequently, the attempt to revive his punitive damages claim based upon this fact is, likewise, futile.

### 5.   Prejudice to the opposing party

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *Eminence Capital*, 316 F.3d at 1052. The burden of showing prejudice is on the party opposing an amendment to the complaint. *DCD Programs*, 833 F.2d at 187; *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). There is a presumption in favor of granting leave to amend where prejudice is not shown under Rule 15(a). *Eminence Capital*, 316 F.3d at 1052.

Defendant argues that it would suffer prejudice because "[a] motion to amend the pleadings 'on the eve of the discovery deadline,' let alone after discovery has closed, is inherently prejudicial because it would cause delays in the proceedings." (Doc. 91 at 7-8, quoting *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998)). Indeed, the Ninth determined that "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Solomon*, 151 F.3d at 1139. Because the proceedings would

---

[1] Indeed, the Court is at a loss to understand why the plaintiff's counsel believes that she is not obligated to support her "novel theories" with legal analysis.

be further prolonged through the amendment, and Defendants would be entitled to conduct discovery related to the additional facts and causes of action that Plaintiff seeks to allege, this factor weighs against leave to amend.

**IV.   Conclusion and Order**

Based upon the foregoing, the Court exercises its discretion to deny Plaintiff's motion to amend the complaint.  See Swanson, 87 at 343; Fed. R. Civ. P. 15(a)(2).  Accordingly, the Court **ORDERS**:  Plaintiff's motion for modification of the Court's Scheduling Order and for leave to file the Amended Complaint is **DENIED**.

IT IS SO ORDERED.

Dated:   **February 22, 2017**                 **/s/ Jennifer L. Thurston**
                                                                     UNITED STATES MAGISTRATE JUDGE