**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TREVOR WEEKS,**<br><br>        **Plaintiff**<br><br>        **v.**<br><br>**UNION PACIFIC RAILROAD CO.,**<br><br>        **Defendant** | **CASE NO. 1:13-CV-1641 AWI JLT**<br><br>**ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>(Doc. No. 98) |

       This is an employment discrimination case based on disability brought by Plaintiff Trevor Weeks ("Weeks") against his former employer, Union Pacific Railroad ("UP"). Weeks now moves for reconsideration of the Magistrate Judge's February 22, 2017 order denying leave to amend the complaint ("the Order"). <u>See</u> Doc. Nos. 97, 98. For the reasons that follow, Weeks's motion will be granted in part and denied in part.

## **BACKGROUND**

       On April 21, 2014, the time to file an amended complaint per the scheduling order expired. <u>See</u> Doc. No. 11.

       On March 2, 2015, UP filed a motion for summary judgment. After the summary judgment motion was filed, UP issued Weeks a Notice of Discipline in March 2015 ("March NOD") for excessive absences.

       On April 20, 2015, Weeks filed an untimely opposition to summary judgment that identifies the March NOD as an adverse employment action. <u>See</u> Doc. No. 33.

       On May 6, 2015, UP's reply was filed. <u>See</u> Doc. No. 34. The reply argued *inter alia* that

the Court cannot consider the March NOD because it occurred after UP filed its summary judgment motion.  See id.

In August 2015, the Court received notice that Plaintiff's counsel (William J. Smith) had died.  See Doc. Nos. 40, 41.  Attorney Kay Parker was substituted as counsel.  See Doc. No. 42.

On October 7, 2015, the Court issued a ruling on UP's summary judgment motion.  See Doc. No. 43.  The Court found genuine disputed issues with respect to:  an ADA claim for failure to provide reasonable accommodation, a FEHA claim for failure to provide reasonable accommodation, and a FEHA claim for failure to engage in an interactive process.  See id.  The Court granted summary judgment on the FEHA and ADA claims for disability discrimination because no adverse employment actions had been demonstrated.  See id.  The Court held that reliance on the March NOD postdated the summary judgment motion and was not fairly described in the complaint.  See id.  Although the Court could allow amendment, there was not enough information provided about the March NOD, and the Court disallowed amendment at that time.  See id.  The Court also granted summary judgment on Weeks's California medical leave act claim, Labor Code § 923 claim, FEHA retaliation claim, and punitive damages because Weeks stated in his opposition that he did not oppose summary judgment on those matters.[1]  See id.  Finally, the Court permitted the parties to file additional motions if they thought that they had a good faith basis for doing so.  See id.  Specifically, the Court established mechanisms for UP to file a second summary judgment motion and for Weeks to file a motion to amend with the Magistrate Judge.  See id.

On October 21, 2015, Defendants filed a request to file a second summary judgment motion.  See Doc. No. 44.  The Court ordered the parties to meet and confer.  See Doc. No. 46.

In mid-November 2015, there was a dispute regarding the advisability of a second summary judgment.  See Doc. No. 48.  Weeks stated that his evidence regarding the March NOD and a transfer of two junior employees to a location that would have accommodated Weeks were sufficient to defeat summary judgment.  See id.  Weeks stated that a proposed first amended

---

[1] Of note, Defendants' had argued that there was no evidence that a managing agent was involved in any of the acts complained of (for purposes of California law), and that there was no evidence of "malice, fraud, or oppression" (for purposes of federal law).  See Doc. No. 25 at pp. 16-17.

complaint had been presented to UP and that his request to file a first amended complaint which addressed the March NOD and the transfer of two employees should be granted either through stipulation or court order. See id. Weeks stated that the parties agreed to continue to meet and confer. See id.

On November 18, 2015, the Court issued a clarifying order that explained what claims were at issue. See Doc. No. 49. The Court explained that the claims at issue were those that remained in the Complaint, and claims based on the March NOD were not in the Complaint. See id. The Court ordered the parties to meet and confer on a summary judgment motion that did not include claims based on the March NOD. See id. The Court also noted that Weeks had circulated a proposed amended complaint to UP's counsel and also stated that the amended complaint (if it was filed) would not affect UP's second summary judgment motion unless it omitted certain claims. See id. The Court ordered the parties to meet and confer regarding both the second summary judgment and the amended complaint and set a briefing schedule. Id.

After being granted a one week extension of time, UP filed a second summary judgment motion on January 11, 2016. See Doc. No. 54.

On January 14, 2016, Weeks filed a first amended complaint that included allegations related to the March NOD and the transfers of the two junior employees. See Doc. No. 55.

On January 25, 2016, Weeks filed a motion to amend the original complaint. See Doc. No. 56.

On February 25, 2016, the Magistrate Judge denied the motion to amend and struck the amended complaint. See Doc. No. 68. For purposes of Rule 16, the Magistrate Judge found a lack of diligence by Weeks because nearly eleven months had passed from March 2015 to January 2016, and Weeks had waited two months after the first summary judgment motion had been decided. See id. For purposes of Rule 15, the Magistrate Judge found undue delay and that the proposed amended complaint did not include new causes of action or legal theories, rather the amendments merely added factual support.[2] See id. The Magistrate Judge found that Weeks

_____

[2] The Magistrate Judge also explained that, as demonstrated by Paragraphs 16 and 21 of the original Complaint, Weeks had alleged that since 2005 to the present, UP "engaged in unlawful employment practices, including discrimination on the basis of disability." Doc. No. 68.

would not be precluded from asserting the March NOD in support of being threatened with discipline, and he could use the transfer of the other two employees to support existing claims. See id. Finally, the Magistrate Judge found prejudice because the proceedings would be prolonged and additional discovery would be needed. See id.

On April 21, 2016, the Court denied the second motion for summary judgment in its entirety. See Doc. No. 71. In doing so, the Court relied in part on declarations that had been submitted in connection with the motion to amend. See id. The Court relied on the transfers of the junior employees to show that a transfer was a possible accommodation, and on the March NOD to show that UP may not have been providing medical leave as a good faith accommodation. See id. Under the "Further Proceedings" section, the Court reopened discovery for several reasons: (1) prior counsel's medical condition affected his ability to prosecute the case; (2) significant events occurred around March 2015, well after the close of discovery (the March NOD and the transfers were mentioned); and (3) the new evidence raised questions regarding transfers. Thus, the parties were "permitted to conduct discovery regarding transfers, seniority, and any other issues relevant to Weeks's remaining claims, including the events of March 2015." Id.

On May 19, 2016, a new scheduling order was entered. See Doc. No. 76. Non-expert discovery was to close on October 3, 2016. See id. No new deadline for filing an amended complaint was included in the scheduling order. See id.

On September 18, 2016, a stipulation to extend the discovery deadline was filed. See Doc. No. 77.

On September 20, 2016, the stipulation was rejected. See Doc. No. 78.

On December 29, 2016, Weeks filed a motion for an extension of time to file dispositive and non-dispositive motions. See Doc. No. 82.[3]

On December 30, 2016, Weeks filed a second motion to amend the complaint. See Doc. No. 83.

On January 19, 2017, Weeks filed an amended memorandum regarding the motion to amend the complaint. See Doc. No. 87. Weeks sought to include allegations regarding the March

[3] This motion was denied on January 13, 2017. See Doc. No. 85.

NOD  and the transfers of the junior employees.  See Doc. No. 87-3.  Weeks also included

allegations that UP allowed his engineering license to expire on January 9, 2017.  See id.  Weeks's

proposed amended complaint attempts to add disparate treatment, retaliation, and wrongful

termination claims, as well as a request for punitive damages.  See id.

On February 22, 2017, the Order was issued denying Weeks's motion to amend.  See Doc.

No. 97.  In terms of Rule 16, the Order concluded that the original scheduling order's "amended

pleading deadline" remained in place.  See id.  A lack of diligence was again found with respect to

the events of March 2015, but diligence was found with respect to the events surrounding the

expiration of Weeks's locomotive certification around January 2017.  See id.  Because there was

sufficient diligence for purposes of Rule 16, the Order analyzed whether amendment to include

additional claims was appropriate under Rule 15.  See id.  In terms of Rule 15, there was undue

delay regarding the events of March 2015, but no delay regarding the locomotive certification.

See id.  The Order found that inclusion of claims related to the locomotive certification would be

futile because the Federal Railroad Administration ("FRA") has an administrative scheme

(pursuant to the Federal Railway Safety Act ("FRSA")) that must be followed with respect to

locomotive licenses, and Weeks has not filed a claim with the FRA.  See id.  The Order also found

that an assertion that Weeks was discharged based on his disability is merely evidence of his

damages arising under the ADA and is not a separate claim; Weeks has always claimed that UP

prohibited his return to work, either with or without a certification, by failing to accommodate his

condition.  See id.  Finally, the Order found prejudice because the Ninth Circuit has upheld a

finding of prejudice when a motion to amend was filed on the eve of trial and the additional

discovery would have caused a delay in the trial.  See id.  Because discovery would have to be

reopened, UP would be prejudiced.  See id.  The Order concluded by denying Weeks's motion

through citation to Rule 15(a)(2) and *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th

Cir. 1996) (a case that *inter alia* discussed amendment of complaints and the *Foman* factors).[4]

On March 9, 2017, Weeks filed this motion for reconsideration.  Following receipt of an

---

[4] *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The *Foman* factors are considered in connection with Rule 15 motions.
See C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 n.5 (9th Cir. 2011); Ledsinger, Inc. v. BMG Music
Publ'g, 512 F.3d 522, 532 (9th Cir. 2008).

opposition, and reply, a hearing was held on April 10, 2017.  Supplemental briefing regarding the

FRSA was ordered at the hearing and has now been received.

On May 1, 2017, trial in this matter was vacated due to conflicting trial schedules

involving the re-trial of an older case before District Judge Drozd and the pendency of the motion

to amend.  <u>See</u> Doc. No. 115.

## WEEKS'S MOTION

### *Weeks's Argument*

In his memorandum in support of reconsideration, Weeks argues that there was no undue

delay regarding the events of March 2015.  Weeks alerted the court to those events in April 2015,

UP responded to it in the reply, and Weeks did nothing further because the motion for summary

judgment was under submission.  Weeks also argues that there was no delay in raising the

certification claim, and no prejudice to UP.  UP had all of the power and authority over the

license, and knowingly failed to include Weeks in the necessary testing, that it had been doing all

the years that Weeks was an engineer.

Weeks argues that the FRA regulations do not apply to his claims.   His claims are for

discrimination under the ADA and FEHA, and he is not challenging an improper testing procedure

or a failure to certify.  Weeks brought this matter to the attention of the EEOC and received a right

to sue letter.  All administrative procedures for this claim have been exhausted.

Weeks also argues that there is no prejudice to UP.  UP's own misconduct occurred on the

eve of trial, which necessitates discovery on the eve of trial.

Additionally, Kay Parker submitted two declarations.  In pertinent part, Parker's first

declaration states:  (1) she did not think it was appropriate to file a motion for leave to amend the

compliant while the summary judgment motion, which included arguments from both sides

regarding the March NOD, was under submission; (2) she obtained right to sue letters from EEOC

and DFEH regarding the events of March 2015; (3) she met and conferred with defense counsel

regarding a second summary judgment motion and an amended complaint; (4) UP was not

cooperative after discovery was re-opened; (5) she learned in January 2017 that UP did not notify

Weeks of the dates and locations for the locomotive engineer tests, as it usually had done, and that his license expired; (6) allowing Weeks's license to expire, after UP stopped paying him, providing insurance, and providing retirement credits, was sending a message that Weeks was fired; and (7) the latest right to sue letter from EEOC is for retaliatory constructive discharge. Parker's second declaration explains the problems and errors she encountered while trying to file her motion for reconsideration on March 8 (which was filed on March 9), explains that she contacted the Court and IT about the problem, and that IT was troubleshooting the problem.

In reply, Weeks states the UP does not cite any authority that shows that the FRA has exclusive jurisdiction over the retaliation claims identified in the EEOC's right to sue letter. Further, UP does not deny that it failed to inform Weeks of the date and time or the location of the testing for renewal of his locomotive engineer's certification, as it had always done before Weeks filed an EEOC charge and this lawsuit.

Finally, as part of supplemental briefing, Weeks requests *inter alia* that the court examine the punitive damages issue. It is unknown why prior counsel (who was ill) did not oppose summary judgment. UP has a corporate culture of vindictive retaliation, and UP's employees have made contradictory and inconsistent statements. Weeks states that he has found case law granting punitive damages "where no higher level officer of the corporation was identifiable."

### *UP's Opposition*

UP argues that the Order appropriately denied amendment and should be affirmed. First, Weeks's motion was due on March 8, 2017, but it was filed on March 9, 2017. For this reason alone, reconsideration should be denied. Second, Weeks does not address "good cause" under Rule 16, rather he only challenges the Rule 15 analysis. Weeks has presented no new information that has not already been considered and rejected in the previous attempt to bring claims based on the March NOD. Third, Weeks expressly abandoned his punitive damages claim in his opposition to summary judgment. Finally, pursuant to *Peters v. Union Pac. R.R.*, 80 F.3d 257 (8th Cir. 1999), the Magistrate Judge correctly concluded that, if a locomotive engineer has been denied certification, denied recertification, or had his license revoked, the engineer must petition the FRA. Because Weeks failed to do so, he cannot maintain his wrongful termination claim. Also,

the order denying leave to amend correctly noted that an assertion that Weeks was discharged based upon his disability is merely evidence of his damages arising under the ADA, and Weeks has always claimed that UP prohibited him from returning to work by failing to accommodate his disability.

In reply, UP argues that additional reasons support denying reconsideration with respect to Weeks's certification. First, Weeks's employment status has not changed and, assuming he satisfies certification requirements, Weeks would be recertified to return to work. Second, Weeks has maintained that UP refuses to accommodate his disability and refuses to return him to work. The fact that he has now lost his license adds nothing to the analysis because without a route that accommodated his condition, he could not return to work even with a license. Third, calling the allegations "wrongful termination" does not add anything to the analysis. Fourth, Weeks has not alleged facts that describe how expiration of the certification is a retaliatory action, nor has he linked the act to protected activity.

In supplemental briefing, UP argues that Weeks is creating a shifting target. While his EEOC charge and the proposed amended complaint contend that UP allowed Weeks's certification to expire, Weeks argues in his briefing that UP did not tell him about meetings for recertification. UP also argues that Weeks cannot establish a constructive discharge. To recover for constructive discharge, an employee's resignation must be coerced and not caused by an employee's voluntary action that is beyond the employer's reasonable control. Because UP had no way of compelling Weeks to undergo various certification procedures and exams, the lapse of the license was beyond UP's control.

### *Legal Standard*

### a.    Review of Magistrate Judge's Order

A district court may refer pretrial issues to a magistrate judge under 28 U.S.C. § 636(b)(1). See Bhan v.NME Hosp., Inc., 929 F.2d 1404, 1414 (9th Cir. 1991). If a party objects to a non-dispositive pretrial ruling by a magistrate judge, the district court will review or reconsider the ruling under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a); Grimes v. City of San Francisco, 951 F.2d 236, 240-41 (9th Cir. 1991). A

magistrate judge's factual findings or discretionary decisions are "clearly erroneous" when the district court is left with the definite and firm conviction that a mistake has been committed. Security Farms v. International Bhd. of Teamsters, 124 F.3d 999, 1014 (9th Cir. 1997); McAdam v. State Nat'l Ins. Co., 15 F.Supp.3d 1009, 1013 (S.D. Cal. 2014); Avalos v. Foster Poultry Farms, 798 F.Supp.2d 1156, 1160 (E.D. Cal. 2011). This standard is significantly deferential. Avalos, 798 F.Supp.2d at 1160. The district court "may not simply substitute its judgment for that of the deciding court." Grimes, 951 F.2d at 241; Avalos, 798 F.Supp.2d at 1160. The "contrary to law" standard, however, allows independent plenary review of purely legal determinations by the magistrate judge. See Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3rd Cir.1992); Avalos, 798 F.Supp.2d at 1160; Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1110-11 (E.D. Cal. 2011). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Avalos, 798 F.Supp.2d at 1160; Jadwin, 767 F.Supp.2d at 1011.

      **b.**    Rule 15 – Amendments to Pleadings[5]

Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2); C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011); Zucco Partners, LLC v. Digimarc Ltd., 552 F.3d 981, 1007 (9th Cir. 2009). "This policy is to be applied with extreme liberality." C.F., 654 F.3d at 985; Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). However, a court may deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

---

[5] As noted above, there is a scheduling order in this case, and at the time of Weeks's motions to amend, the deadline for filing amended pleadings had passed. Under these circumstances, there is a two-step process for determining whether to allow an amended complaint. First, the moving party must demonstrate "good cause" under Rule 16(b)(4) to amend the scheduling order. See Mentor Graphics Corp. v. EVE-USA, Inc., 13 F.Supp.3d 1116, 1121 (D. Or. 2014); Jackson v. Laureate, Inc., 186 F.R.D. 605, 606-07 (E.D. Cal. 1999); Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D. N.C. 1987); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992) (citing Forstmann with approval). Second, if "good cause" under Rule 16(b)(4) is demonstrated, the moving party must then show that an amended complaint is proper under the standards of Rule 15. See Mentor Graphics, 13 F.Supp.3d at 1121; Jackson, 186 F.R.D. at 606-07; Forstmann, 114 F.R.D. at 85; see also Johnson, 975 F.2d at 608. Here, the Magistrate Judge found sufficient grounds to meet the Rule 16(b)(4) "good cause" standard through the events surrounding the January 2017 lapse of certification. No party challenges the finding that "good cause" has been sufficiently shown. Therefore, the Court accepts that finding and will focus on whether the proposed amended complaint meets the standards of Rule 15.

deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of amendment." <u>Zucco</u>, 552 F.3d at 1007; <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 512 F.3d 522, 532 (9th Cir. 2008). These considerations are not given equal weight, and delay by itself is insufficient to deny leave to amend. <u>DCD Programs</u>, 833 F.2d at 186. Prejudice to the defendant is the most important factor, but amendment may be denied upon a sufficiently strong showing of other factors. <u>See</u> <u>Eminence Capital</u>, 316 F.3d at 1052. "Absent prejudice, or a strong showing on any of the remaining [considerations], there exists a presumption under Rule 15(a) in favor of granting leave to amend." <u>C.F.</u>, 654 F.3d at 985.

### *Discussion*

#### a.    Timeliness of Plaintiff's Motion

Pursuant to Local Rule 303(b), a party has fourteen days in which to seek reconsideration with the District Judge of a Magistrate Judge's order. UP is correct that Weeks filed his motion one day late, on March 9, 2017. However, Parker's second declaration explains that she is familiar with the Court's CM/ECF e-filing system, she has used it regularly, and filing a document is usually a 5 to 7 minute endeavor. <u>See</u> Doc. No. 99. On the night of March 8, 2017, while uploading the motion for reconsideration, Parker received a message that stated, "System Error: Unable to Complete Docketing." <u>Id.</u> She tried several times to file the motion, but was unable to do so. <u>See id.</u> On March 9, 2017, Parker declares that she notified the Court and the IT Department of the problem, and the IT Department began looking into to the matter and attempting to troubleshoot. <u>See id.</u> However, because of the technical problems, Parker declares that she was effectively blocked out of the ECF System on March 8. <u>See id.</u>

The Court is satisfied that Parker is familiar with the Court's ECF System, has used the system without difficulty in the past, but experienced a technological failure. In light of Parker's declaration, including her efforts to notify the Court and the IT Department of the problem, the Court is satisfied that the deadline to file the motion for reconsideration should be extended by one day. Therefore, the Court will consider Weeks's motion for reconsideration on the merits.

#### b.    Claims Relating To The Lapse of Certification In January 2017

It is necessary to determine what precisely Weeks is attempting to allege. In supplemental

briefing, UP contends that Weeks is claiming that he was improperly denied recertification.  See Doc. No. 108 at 8:15-16.  In the proposed amended complaint, Weeks alleged that Union Pacific allowed his locomotive certification to expire.  See Doc. No. 87-3 at ¶ 26.  Under Count 4 of Claims 1 and 2, which is entitled "wrongful termination," Weeks alleges that UP "allowed his certification to expire, thereby rendering Plaintiff ineligible to work as a locomotive engineer driving trains.  For 18 years, [UP] had been providing necessary employer information to keep Plaintiff's locomotive engineers license current and valid – until January 2017."  Id. at ¶¶ 48, 60. At the hearing on this motion, Weeks's counsel clarified the Count 4 allegations.  Counsel stated that UP did not notify Weeks of the time, place, and location for him to renew his license/attend meets regarding continuing education  and renewal, even though UP had done so for over 18 years.  In supplemental briefing, Weeks again points to the failure of UP to notify him of the date, time, and location of the meeting of locomotive engineers who were getting their licenses renewed.  See Doc. No. 109 at 4:23-24.  Weeks states that the "issue raised in the proposed first amended complaint related to the expiration of Weeks's locomotive engineer's license is not 'whether [UP] would have wrongfully failed to certify Weeks if it had notified him of the date, time, and location of the license renewal meeting,' but rather 'what was the reason why [UP] failed to notify Weeks of the date, time, and location of the renewal meeting?"  Id. at 5:18-23 (emphasis in original).  Given the proposed complaint's allegations and the representations in the supplemental briefing and at the hearing, the Court construes Weeks's claims under Count 4 as being based on UP's failure to notify him of what the Court will term "renewal meetings," despite having done so for 18 years.  That is, the "adverse employment action" is not the decision to deny recertification, the adverse employment action is the failure to provide the customary notification of "renewal meetings."  With this understanding, the Court will consider whether amendment to include claims based on a failure to provide customary notification is appropriate.

(1)     Preemption by the Federal Railroad Safety Act

The FRSA (49 U.S.C. § 20100 et seq.) was enacted "to reduce railroad-related accidents and deaths and to improve rail safety more generally."  Southern Pac. Transp. Co. v. Public Util. Comm'n, 9 F.3d 807, 812 (9th Cir. 1993).  Pursuant to the FRSA, the FRA has issued

administrative rules regarding *inter alia* the training and certification of locomotive engineers.

<u>See</u> 49 C.F.R. Part 240; <u>Carpenter v. Mineta</u>, 432 F.3d 1029, 1031 (9th Cir. 2005).  As a means of

promoting railway safety, FRA regulations seek to ensure "that locomotives are only operated by

qualified and safe engineers."  <u>Carpenter</u>, 432 F.3d at 1031. "The FRA does not actively

participate in engineer testing or certification, but administers the regulation through approval and

monitoring of individual railroads' programs, including their training and testing regimens."  <u>Id.</u>

The "regulations were not designed to affect the relationships between railway companies and

their labor force."  <u>Id.</u>  The FRA has a dispute resolution process "in which a person denied

engineer certification may obtain a fresh determination by the FRA of whether the railroad's

decision was correct."  <u>Id.</u>  "Any person who has been denied certification, denied recertification,

or has had his or her certification revoked and believes that a railroad incorrectly determined that

he or she failed to meet the qualification requirements of this regulation when making the decision

to deny or revoke certification, may petition the [FRA] to review the railroad's decision."  49

C.F.R. 240.401(a).  Additionally, the FRSA has an express preemption clause.  <u>See</u> 49 U.S.C. §

20106.  With exceptions not applicable here, <u>see</u> 49 U.S.C. § 20106(b), state laws (including

common laws), regulations, or orders relating to railroad safety are preempted by federal

administrative regulations or orders "covering the subject matter of the State requirement." 49

U.S.C. § 20106(a); <u>CSX Transp., Inc. v. Easterwood</u>, 507 U.S. 658, 664 (1993).  The state

requirement must do more than "touch upon" or "relate to" to the FRSA/an FRA regulation

because the term "covering is a more restrictive term which indicates that preemption will lie only

if the federal regulations substantially subsume the subject matter of the relevant state law."  <u>CSX

Transp.</u>, 507 U.S. at 664; <u>Southern Pac. Transp. Co. v. Public Util. Comm'n</u>, 9 F.3d 807, 812 (9th

Cir. 1993).  Stated differently, a state requirement "covers the same subject matter" of the

FRSA/an FRA regulation if the state requirement "addresses the same safety concern as the FRA

regulation."  <u>Burlington N. R.R. Co. v. Montana</u>, 880 F.2d 1104, 1105 (9th Cir. 1989); <u>Prentice v.

Amtrak</u>, 2014 U.S. Dist. LEXIS 108585, ; <u>see also</u> <u>Burlington N. & Santa Fe R.R. Co. v. Doyle</u>,

186 F.3d 790, 796 (7th Cir. 1999) (quoting *Montana*).

      As discussed above, Weeks is contending that he was retaliated against because UP,

contrary to its 18 year practice, failed to notify him of the certification renewal meetings and that this conduct violated the ADA and FEHA. Weeks is not complaining about UP's decision to deny recertification, he is not complaining about any training methodology or testing criteria, and he is not attempting to obtain his license. That is, Weeks is not contending that UP "incorrectly determined that he . . . failed to meet the qualification requirements . . ." for recertification, 49 C.F.R. 240.401(a), nor is he seeking to "obtain a fresh determination by the FRA of whether [UP's recertification] decision was correct." Carpenter, 432 F.3d at 1031. The claims, as clarified by Weeks, do not fit within the express language of the FRA's dispute resolution regulations. See id.

Further, the subject matter of the FEHA and the ADA is discrimination. Glow v. Union Pac. R.R. Co., 652 F. Supp. 2d 1135, 1145-46 (E.D. Cal. 2009). As relevant here, the subject matter of the FRSA and 49 C.F.R. Part 240 is the criteria for ensuring that safe and qualified individuals operate locomotives. See 49 U.S.C. §§ 20101(a), 20135; 49 C.F.R. § 240.1; Carpenter, 432 F.3d at 1031. The ADA and FEHA are not safety statutes or regulations. The FRSA and the ADA/FEHA address different subject matters entirely. Cf. Glow, 652 F.Supp.2d at 1145-46 (finding a FEHA reasonable accommodation claim was not preempted by *inter alia* the FRSA). Weeks is not attempting to challenge the substance of UP's certification program or the actual decision to deny recertification. Weeks's claim is that UP took retaliatory steps against him so that he would not be aware of the meetings that were done in preparation for recertification. This claim does not encompass any safety or competency standards. Neither the decision to deny recertification nor safety considerations regarding a person's qualifications to operate a locomotive is directly implicated by Weeks's claims. At most, Weeks's claims may "touch on" 49 C.F.R. Part 240, which is not sufficient for preemption. See CSX Transp., 507 U.S. at 664; Southern Pac., 9 F.3d at 812.

UP relies heavily on a case from the Eighth Circuit, *Peters v. Union Pacific R.R.*, 80 F.3d 257 (8th Cir. 1996), to argue that Weeks's Count 4 claims are preempted. In that case, Peters was a locomotive engineer who had his certification suspended for one month due to various operational infractions. See Peters, 80 F.3d at 259. The suspension was in accordance with FRA regulations. See id. Peters was also discharged. See id. After union involvement and

negotiations, Peters was reinstated six months after discharge and was reissued his certification card.  See id. at 259-60.  Peters brought suit against the railroad and alleged a state law claim for conversion of his certification card for the six months between the lapse of his suspension and his reinstatement.  See id.  The Eighth Circuit found that the conversion claim was preempted by the FRSA.  See id. at 262.  The conversion claim depended upon Peters's entitlement to the certification card, and nothing in the regulations established an automatic recertification following a suspension or ineligibility period.  See id.  The Eighth Circuit held that the conversion claim was "necessarily a challenge to Union Pacific's certification decision, it follows that the claim comes within the scope of the FRSA regulations and is preempted."  Id.  In this case, however, Weeks is not challenging a certification decision and his claims are not premised on an entitlement to a certification card.  Weeks is claiming that UP retaliated against him by not informing him of renewal meetings for the first time in 18 years.  The nature of Weeks's claims is fundamentally different from the conversion claim advanced in *Peters*.  Therefore, *Peters* does not apply.

In sum, the Court concludes that Weeks's claims are not "preempted" by the FRSA.[6]

### (2)    Relevance Beyond Damages

The Court does not agree that the failure to inform Weeks of "renewal meetings" would only be relevant to damages.  There currently are no retaliation claims in this case.  Based on the representations made to the Court, breaking with an 18 year old practice of informing engineers of "renewal meetings" appears to be an "adverse employment action."  As an "adverse employment action," it could satisfy a critical element of retaliation claims under the ADA and FEHA.  See Garity v. APWU Nat'l Labor Org., 828 F.3d 848, 863 n.16 (9th Cir. 2016); Moore v. Regents of the Univ. of Cal., 248 Cal.App.4th 216, 244-45 (2016); Ninth Circuit Model Jury Instruction (Civil) 12.9; Judicial Council of Cal., Jury Instructions (Civil) § 2505 (Fall 2016 ed.).  Since the failure to inform of renewal meetings could meet a key element of separate causes of action, such conduct has significance beyond being additional factual support to existing claims.

---

[6] Technically, the FRSA does not "preempt" the ADA because the preemption doctrine "is inapplicable to a potential conflict between two federal statutes."  Tufariello v. Long Island R.R., 458 F.3d 80, 85 (2d Cir. 2006).  Further, the preemption provision of the FRSA expressly addresses only "state law."  49 U.S.C. § 20106.

### (4) Prejudice To UP

There has been an insufficient showing of prejudice for purposes of Rule 15. Importantly, UP's conduct is recent and it is UP's conduct that forms the basis for adding additional claims. Moreover, the Court has vacated the trial in this matter primarily due to conflicting trial schedules. While there will be a delay in the trial, it will not primarily be because of an amended complaint.

### (5) Conclusion

After conducting an independent plenary review and accepting clarification from Weeks, the Court respectfully concludes that the findings of preemption and prejudice are a misapplication of law and thus, are contrary to law. See Avalos, 798 F.Supp.2d at 1160. Weeks's claims based on a failure to inform of renewal meetings are not preempted by the FRSA. Further, because the information presented at this time indicates that the failure to inform constitutes an "adverse employment action," the allegations are relevant beyond supplying additional factual support for existing claims. Since amendment would not be futile and there is insufficient prejudice to UP, Weeks will be permitted to file an amended complaint that includes ADA and FEHA retaliation claims based on the failure to inform of renewal meetings.

### c. Claims Based On The Events of March 2015

### (1) Prejudice To UP

As indicated above, the events of March 2015 (i.e. the March NOD and the transfer of junior employees to a position that would have accommodated Weeks) were first raised by Weeks in April 2015 as part of his opposition to summary judgment, and UP acknowledged the March NOD in its reply memorandum. In January 2016, in his first proposed amended complaint, Weeks included language that the March NOD disqualified Weeks for the two open positions that were filled by the junior employees. See Doc. No. 55 at ¶¶ 27-30. When the first motion to amend was denied, the Magistrate Judge stated that the events of March 2015 could be used to support existing claims. In April 2016, the Court's second summary judgment order discussed the March NOD and the transfers of the junior employees, and then reopened discovery in part so that the events of March 2015 could be explored. See Doc. No. 71 at 19.

This sequence of events shows that there are no surprises with the respect to the events of

March 2015. The events have been known and raised in this Court in some from since April 2015. Moreover, discovery was specifically opened so that the events of March 2015 could be explored. At oral argument, Weeks's counsel indicated that discovery did occur, primarily in the form of depositions. Defense counsel did not contradict this assertion. Defense counsel also did not state that UP did not conduct discovery regarding the events of March 2015 or, importantly, that UP did not have the opportunity to conduct discovery regarding the events of March 2015. Further, when asked at the hearing if UP wished to elaborate on any prejudice and the events of March 2015, UP did not identify any actual prejudice to it that would stem from including claims based on the events of March 2015. Finally, the trial date in this matter has been vacated, and the vacation is due primarily to conflicting trial schedules.

In light of the above, the Court concludes that there is no prejudice to UP if claims based on the events of March 2015 are included in an amended complaint.

### (2) Undue Delay

The procedural history of this case shows that Weeks timely notified the Court of the events of March 2015. It is true that a number of months had passed between March 2015 and the first motion to amend filed in January 2016. However, although the Court is unaware of a rule on point, the filing of a motion between April 2015 (the date of Weeks's opposition) and October 2015 (the date the first summary judgment motion was decided) would have caused a disruption in the summary judgment process and likely would have been viewed with disfavor. The Court does not fault Weeks for failing to file a motion to amend during the period in time in which the motion for summary judgment was under submission. Further, after the summary judgment order issued, the Court issued several orders for the parties to meet and confer regarding not only a second summary judgment motion, but also an amended complaint. The first issue to be resolved was whether a second summary judgment motion would be filed, once that issue was determined, and efforts to meet and confer regarding both the summary judgment motion and an amended complaint were complete, Weeks filed his amended complaint and first motion to amend. Before Weeks filed the first motion to amend, a proposed amended complaint had been circulated, meet and confer efforts had been on-going, and Weeks had so informed the Court. This course of

conduct does not demonstrate a lack of diligence or undue delay.

Once the Court issued its order on the second summary judgment motion, Weeks conducted discovery. Weeks did not request a new deadline for filing an amended complaint. It appears that the parties were continuing to discuss extending the discovery deadline until after October 3, 2016, and Weeks attempted to extend the discovery and motions deadlines. However, Weeks did not file a motion to amend the complaint until about three months after the new discovery period had ended.

Given the totality of the above, the Court finds that there is some delay. However, Weeks has consistently attempted to raise the events of March 2015 and to include them as part of his bases for relief since April 2015. The delay in seeking leave to amend following the close of the second discovery period is concerning. Nevertheless, considering the ruling on the first motion to amend, the previous efforts to raise issues surrounding the events of March 2015, and the discovery that was conduct, under the totality of these unique circumstances the Court finds that the delay is not egregious.

(3)    Relevance Beyond Damages

The Court previously granted summary judgment on the "disparate treatment" claims because there was no evidence of any "adverse employment actions." See Doc. No. 43 at 14-17. Based on the representations made to the Court, at least the March NOD now appears to be an "adverse employment action." As an "adverse employment action," the March NOD could satisfy a key element of an ADA and FEHA disparate treatment. See Garity, 828 F.3d at 863 n.16; Furtado v. State Personnel Bd., 212 Cal.App.4th 729, 744 (2013) (FEHA case); Ninth Circuit Model Jury Inst. (Civil) 12.1; Judicial Council of Cal., Jury Instructions (Civil) § 2540 (Fall 2016 ed.). That is, the March NOD could form the basis of a cause of action that is separate from the current "failure to accommodate" claims.[7] Also, as an adverse employment action, the March NOD could satisfy an element of a retaliation claim under the ADA and FEHA. See Garity, 828

---

[7] A "disparate treatment" claim is distinct from a "failure to accommodate" claim. See Johnson v. Board of Trs. of Boundary Sch. Dist., 666 F.3d 561, 567 (9th Cir. 2011) (ADA case); Furtado, 212 Cal.App.4th at 744 (setting out the separate elements for a FEHA "failure to accommodate" claim and a FEHA disability discrimination/"disparate treatment" claim) ; see also Anderson v. Harrison Cnty., 639 F. App'x 1010, 1016 n.8 (5th Cir. 2016); Voeltz v. Arctic Cat, Inc., 406 F.3d 1047, 1051 (8th Cir. 2005).

17

F.3d at 863 n.16; <u>Moore</u>, 248 Cal.App.4th at 244-45; Ninth Circuit Model Jury Instruction (Civil) 12.9; Judicial Council of Cal., Jury Instructions (Civil) § 2505 (Fall 2016 ed.).  Since the March NOD could form the basis of separate causes of action, the March NOD has significance beyond being additional factual support to existing claims.

(4)    Conclusion

After considering the arguments and evidence, and conducting an independent plenary review of the matter, the Court respectfully concludes that the findings used to support a denial of amendment are a misapplication of law and thus, contrary to law.  <u>See</u> <u>Avalos</u>, 798 F.Supp.2d at 1160.  Relative to the complaint, the events of March 2015 are new factual developments that support additional causes of action, and the relevant Rule 15 considerations support permitting amendment.  <u>See</u> <u>C.F.</u>, 654 F.3d at 985; <u>Zucco</u>, 552 F.3d at 1007.  Therefore, Weeks will be permitted to amend his complaint to include the events of March 2015 in support of disparate treatment and retaliation claims under the ADA and FEHA.

d.    Count 2 of ADA Claim - Interactive Process

Weeks's proposed amended complaint appears to have a distinct claim under the ADA for failure to engage in the interactive process.  Under FEHA, there is a separate cause of action for failure to engage in an interactive process.  <u>See</u> Cal. Gov. Code § 12940(n).  However, as explained in the first summary judgment order, there is no independent cause of action for failure to engage in the interactive process under the ADA.  <u>See</u> Doc. No. 43 at 12:23-24 (citing <u>Stern v. St. Anthony's Health Ctr.</u>, 788 F.3d 276, 292 (7th Cir. 2015); <u>Kramer v. Tosco Corp.</u>, 233 F. App'x 593, 596 (9th Cir. 2007)).  Weeks may not include an independent cause of action under the ADA for failure to engage in an interactive process.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Mujica v. AirScan, Inc.</u>, 771 F.3d 580, 592 (9th Cir. 2014) (futility alone can be sufficient to justify denial of amendment).

e.    Punitive Damages

Under California law, a plaintiff may obtain punitive damages against a corporation "if the [corporate] employee is sufficiently high in the corporation's decision-making hierarchy to be an 'officer, director, or managing agent.'"  <u>Gelfo v. Lockheed Martin Corp.</u>, 140 Cal.App.4th 34, 63 (2006) (citing Cal. Civ. Code § 3294 and <u>White v. Ultramar, Inc.</u>, 21 Cal.4th 563, 572 (1999)).

18

Under the ADA, a plaintiff may obtain punitive damages against his corporate employer through use of traditional agency principles. Kolstad v. American Dental Ass'n, 527 U.S. 526, 540-41 (1999); EEOC v. E.I. Du Pont de Nemours & Co., 480 F.3d 724, 732 (5th Cir. 2007); Hemmings v. Tidyman's, Inc., 285 F.3d 1174, 1197 (9th Cir. 2002). Punitive damages are available when a managerial employee acted within the scope of his or her employment. Kolstad, 527 U.S. at 540-41; Hemmings, 285 F.3d at 1197. Stated differently, a corporate employer is liable for punitive damages when its "malfeasing agent served in a 'managerial capacity' and committed the wrong while 'acting in the scope of employment.'" E.I. Du Pont, 480 F.3d at 732.

In his opposition to UP's first summary judgment motion, Weeks expressly stated that he did not oppose summary judgment on punitive damages. See Doc. No. 33 at 2:12-13. At oral argument and in supplemental briefing, Weeks argues that it is unknown why his former counsel did not oppose summary judgment on punitive damages. However, the precise reason why Weeks's former counsel chose not to oppose summary judgment is not really the issue. As the agent of his client, an attorney's acts generally are attributed to his client, even if those acts are negligent. See Towery v. Ryan, 673 F.3d 933, 941 (9th Cir. 2012); Community Dental Services v. Tani, 282 F.3d 1164, 1168 (9th Cir. 2002). That Weeks's current counsel may disagree with the decision of Weeks's former counsel is not by itself a sufficient basis to revisit the issue. Weeks will not be permitted to include a prayer for punitive damages that is based on the conduct described in the original complaint. See id.

Nevertheless, at oral argument, Weeks's counsel also indicated that events after the filing of the original complaint could support punitive damages. In particular, the events of March 2015 and the failure to inform of renewal meetings were identified. Weeks's counsel also identified several managerial level employees whose conduct may subject UP to punitive damages. Because these events postdate the original complaint, the Court will permit Weeks to include a request for punitive damages based on the events of March 2015 forward.

As part of the amended complaint, and in connection with claims based on the events of March 2015, Weeks will be required to identify an "officer, director, or managing agent" for punitive damages under FEHA, and a "managerial employee" for punitive damages under the

ADA.  Considering the discovery that has occurred, Weeks should know which UP employees were involved with the March 2015 events.  However, for events based on the failure to inform of renewal meetings, because this is a very recent event and no discovery has occurred (unlike the events of March 2015), Weeks need not identify an actual managerial employee or officer, director or managing agent.

### f.    Constructive Discharge

Weeks has described his Count 4 claims as "retaliatory constructive discharge" claims.  A constructive discharge is an adverse employment action.  See Jordan v. Clark, 847 F.2d 1368, 1377 n.10 (9th Cir. 1988).  As an adverse employment action, a constructive discharge may meet a key element in either a disparate treatment or retaliation claim.  However, a constructive discharge occurs when an employee resigns because of a working environment that has become so egregious and intolerable that a reasonable person in the employee's position also would have resigned.  See Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cir. 2007); Draper v. Coeur Rochester, 147 F.3d 1104, 1110 (9th Cir. 1998); Steele v. Youthful Offender Parole Bd., 162 Cal.App.4th 1241, 1253 (2008).  Here, there is no indication that Weeks has resigned from UP.  Therefore, Weeks may not pursue claims based on a "constructive discharge."[8]

### g.    Amended Complaint

Weeks will not file the proposed amended complaint (Doc. No. 87-3).  Instead, Weeks will file an amended complaint, entitled First Amended Complaint ("FAC").  As part of the FAC, Weeks will expressly identify the adverse employment actions at issue with respect to his disparate treatment claims.  Weeks will also expressly identify protected conduct and the resulting adverse employment actions with respect to his retaliation claims.  The FAC should be consistent with the analysis of this order.

---

[8] The parties appear to dispute Weeks's employment status.  At this time it is unclear whether Weeks's is employed or whether he has somehow been terminated.  Cf. Clements v. Barden Miss. Gaming, L.L.C., 373 F.Supp.2d 653, 668-69 (N.D. Miss. 2004) (finding that a failure to hire/rehire was an effective or de facto termination); Bailey v. Ga.-Pac. Corp., 176 F. Supp. 2d 3, 6-7 (D. Me. 2001) (describing a failure to participate in an employee's work-release program to be a de facto termination).  For purposes of this motion, it is enough for the Court to conclude that Weeks may not pursue claims based on a "constructive discharge" because he has not resigned.

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for reconsideration is GRANTED, consistent with the above analysis;

2.     Within ten (10) days of service of this order, Plaintiff shall file a First Amended Complaint;

3.     Within ten (10) days of service of the First Amended Complaint, Defendant shall file an answer;

4.     A telephonic status conference will be held on May 22, 2017 at 11:00 a.m. for purposes of setting a trial date;

5.     Within fourteen (14) days of service of Defendant's answer, the parties shall contact the Magistrate Judge for purposes of setting additional discovery or other appropriate deadlines that may be necessary in light of this order.[9]

IT IS SO ORDERED.

Dated:   May 3, 2017                                      

SENIOR DISTRICT JUDGE

---

[9] Nothing in this order should be read to preclude the parties from voluntarily continuing any discovery efforts on their own (such as depositions) and without court involvement.